Birchard, J.
It is a rule of criminal law, based upon sound principles, that every indictment should contain a complete description of the offense charged. That it should set forth the facts constituting the crime, so that the accused may have notice of what he is to meet; of the act done, which it behooves him to controvert, and so that the court, applying the law to the facts charged against him, may see that a crime has been committed.
A contrary doctrine would deprive the accused of one of the moans humanely provided for the protection of innocence; the right of having the law of his case passed upon by judges learned *244 and experienced in matters of criminal jurisprudence. For how could a court determine, upon the face of this indictment, 'what, were the facts upon which the grand inquest of the county predicated their conclusion, that the sheriff was unlawfully resisted in the execution of his duty? This indictment sets forth no fact whatsoever. It merely states a conclusion of law, predicated upon a supposed state of facts. Whether this conclusion was correct, or an error of the grand jury, we have no means of determining. For aught that appears, it may have been that the sheriff was ex-, ecuting an illegal writ, one without a seal, or issued from a court having no jurisdiction, *or from some other cause defective. It is not safe to trust to such general allegations in an indictment. They do not meet the intention of the framers of the constitution, who provided that every person should be allowed to meet his accuser face to face, and be furnished with the nature and cause of the accusation against him.
It is as general as would be an indictment for forgery, which followed merely the words of the statute, without specifying any act constituting the crime, or an indictment for perjury, which only set forth that a party swore falsely, knowing to the contrary, without setting forth what matters he stated to be facts, and then falsifying them. Would any one attempt to convict a person for passing a counterfeit bank-note on an indictment following the words of the statute, and omitting any description of such bank-note? And yet such an indictment would, in no respect, be less defective than this.
It would give the accused as much information of the nature1 and cause of the accusation sought to be proved against him, of the acts to be inquired into on trial, as does this. The day on which a crime is alleged to have been committed is not held, in general, to be material. It would not be, in an offense of this grade. The prosecutor, supposing the indictment to be good, might, without violating settled rules of law, have offered proof of an unlawful resistance, committed on any day prior to that specified in the indictment, and within the limitation of the statute. And, under this general form of indictment, the accused could not limit him to any particular day, until he offered proof of some act on some given day. It might, and doubtless often would happen in prosecutions, that the accused would be completely surprised by learning, in the midst of the trial, for the- *245 first time, that the transaction which he had prepared to defend .against was not the one of which the state complained.
But it is said the case of the United States v. Bachelder, 2 Gall. 15, will sustain this indictment. If it would, I would overrule it, for it could not stand without violating the spirit of our bill of rights. But it does not sustain the doctrine contended *for. That was a prosecution under the revenue laws; the fact alleged was the resistance of a revenue officer. The act of Congress provided “that if any person shall forcibly resist, prevent, or impede any officer of the customs,” etc. The indictment charged that Bachelder' did, with force and arms, violently and unlawfully resist, prevent, and impede, etc.; and the question was, simply, whether the use of the words “ violently and unlawfully resist,” instead of “forcibly resist,” were sufficient, and the indictment was .sustained: That is all Bachelder’s case settles.
It may be presumed, as was undoubtedly the fact, that the other parts of the indictment, which are not set forth in the report, were in due form, and clearly specified the acts of resistance; and the reason why those parts were not reported was, that they were not to elucidate the point decided.
In the case of Ohio v. Johnson, in which I was counsel, decided by Judges Lane and Wood, on the circuit, in 1834, on an indictment like this, the judgment was reversed. In 1837, before two other judges of this court, two judgments, in the case of the State v. Shoemaker, were reversed in the county of Geauga; the indictments were precisely similar in form to this. A like indictment was held defective, and judgment reversed by Judge Reed and myself, in the county of Wayne, on the last circuit.
It is admitted that this view taken of the case in 2 Gall, is •different from that taken by the American editors of Russell and Chitty. But this fact only shows how unsafe it is to rely on digests, without examining the books of reports, from which the legal principles are supposed to have been gathered.
Judgment reversed.